Jacqueline HAFNER, Plaintiff,

v.

The LUTHERAN CHURCH–MISSOURI SYNOD; Ontario District of the Lutheran Church-Missouri Synod; Albin Stanfel; Konstantine Hahn; Gerald Scholz; Dr. Ralph Bohlman; Matthias Krey, as Chairman of the Department of Missions, Defendants.

Milton HAFNER, Plaintiff,

v.

The LUTHERAN CHURCH–MISSOURI SYNOD; Ontario District of the Lutheran Church-Missouri Synod; Albin Stanfel; and Ralph Bohlman, Defendants.

Nos. 84–612, S 84–737.

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 27, 1985.

Milton Hafner, Middlebury, Ind., for plaintiffs.

Gregory L. Kelly, Lynn C. Tyler, Douglas K. Dieterly, South Bend, Ind., Robert P. Stoner, Valparaiso, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Milton Hafner is an ordained minister in the Lutheran Church-Missouri Synod and is married to Jacqueline Hafner. Milton Hafner is also a duly licensed attorney at law. The complaint of Jacqueline Hafner was filed October 3, 1984 and the complaint of Milton Hafner was filed on December 10, 1984. Both complaints portend to invoke the jurisdiction of this court on the basis of diversity of citizenship under 28 U.S.C. §§ 1332 and 1441. The allegations of the complaints in each case are basically the same except that Jacqueline Hafner alleges the status of a third party beneficiary in the contract to which her husband, Milton Hafner, was a party. Milton Hafner alleges that he became ill while he was a pastor in the Ontario District of the Lutheran Church-Missouri Synod and became disabled. He further alleges that Article III, Section 10 of the Constitution of the Lutheran Church-Missouri Synod placed a duty upon the Ontario defendants to provide for his welfare and that the Ontario defendants failed to discharge this duty. It is further alleged that Article III, Section 10 of the Constitution of the Lutheran Church-Missouri Synod did not become effective until January 23, 1980. Milton Hafner's ministry in the Ontario District lasted until the middle of 1980 at which time he resigned as the pastor of the Mount Olive Lutheran Church in London, Ontario. He continued to work for the Ontario District until the end of 1980. During the entire period between 1976 and end of 1980 Milton Hafner and his wife were residents of Ontario, Canada. He also received treatment for his condition at the Homewood Sanitarium in Guelph, Ontaria, Canada.

Albin J. Stanfel has been President of the Ontario District of the Lutheran Church-Missouri Synod since 1972 and has never been a citizen or resident of the State of Indiana although he is a citizen of the United States of America. Albin J. Stanfel has visited Indiana on several occasions in his capacity as an officer in the Ontario District. Between 1976 and 1981 Stanfel attended meetings in Fort Wayne, Indiana on four or five times per year as an officer of the Concordia Lutheran Theological Seminary located in St. Catharines, Ontario. Each meeting lasted approximately a day and a half and since 1981 his trips to Indiana as such an officer have been less frequent. Stanfel attended a meeting at the office of Dr. Elwood Zimmermann, President of the Indiana District of the Lutheran Church-Missouri Snyod in Fort Wayne, Indiana on January 26, 1984 in an attempt to deal with the claims and controversies that are reflected in the two lawsuits now before this court. Stanfel has also corresponded with Milton Hafner and others in Indiana on four or five occasions with regard to Hafner's moving expenses and continued status as a pastor as well as with regard to matters unrelated to the present case. Stanfel owns no real or personal property located in the State of Indiana. Defendants Stanfel, Gerald Scholz, Konstantine Hahn have been at all times during the pendency of this case and for

some considerable time prior thereto residents of Canada.

All of the defendants in this case raise a fundamental constitutional challenge to the subject matter jurisdiction of this court based upon the First Amendment of the Constitution of the United States and the interpretation thereof by the Supreme Court of the United States, and indeed by this judge in a case decided in the Court of Appeals of the State of Indiana. These defendants bottom the challenge to the subject matter jurisdiction on the most recent relevant statement on that subject as found in the *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). In that case the majority stated:

> "[T]he First Amendment severly circumscribed the role that civil courts may play in resolving church property disputes. First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern.... The First Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine." This principle applies with equal force to church disputes over church policy and church administration. 426 U.S. 709–10, 96 S.Ct. 2380–81.

The majority decision in the *Serbian Eastern Orthodox* case parallels and is consistent with the earlier decision of the Court in *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 89 S.Ct. 601,

21 L.Ed.2d 658 (1969). It is also to be noted that this judge writing for another court in *Draskovich v. Pasalich,* 151 Ind. App. 397, 280 N.E.2d 69 (1972) *cert. denied,* 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1974) [1] dealt with the *Mary Elizabeth Blue Hull Memorial Presbyterian Church* case in a fashion consistent with the Supreme Court's decision in the *Serbian Eastern Orthdox Diocese* case.

In this case the plaintiffs are asking this court to interpret Article III, Section 10 of the Constitution of the Lutheran Church-Missouri Synod. The relevant provision provides:

> The Synod, under Scripture and the Lutheran Confessions, shall—
>
> 10.  Aid in providing for the welfare of pastors, teachers and other church workers, and their families in the event of illness, disability, retirement, special need, or death.

There is some divergence of views between the plaintiffs and the defendants as to the duties that may be imposed upon the defendants under the aforesaid provisions of that church constitution.

If the plaintiffs are correct it will become the function of this court to interpret that provision of that church constitution. Such an inquiry is the kind of inquiry that was requested of and rejected by the Supreme Court of the United States in the *Serbian Eastern Orthodox Diocese* case and in the Court of Appeals in Indiana in the *Draskovich* case. A superficial and cursory examination of the Constitution of the Lutheran Church-Missouri Synod demonstrates beyond question that it is basically and fundamentally a religious doctrine. Indeed, it is the organic document of that church. It includes multiple citations to the Scriptures and a confession of faith.

The progeny of the *Serbian Eastern Orthodox Diocese* is relevant. In *Kaufmann*

---

1.  See also *Merryman v. Price,* 147 Ind.App. 295, 259 N.E.2d 883 (1970), cert. denied, 404 U.S. 852, 92 S.Ct. 89, 30 L.Ed.2d 92 (1971). Cf. *United Methodist Church v. St. Louis Independent Methodist Church,* 150 Ind.App. 574, 276 N.E.2d 916 (1971); *March v. Kragulac,* Ind.App.,

415 N.E.2d 91 (1981), and *Grutka v. Clifford,* Ind.App., 445 N.E.2d 1015 (1983). For an application of the First Amendment in the area of teacher employment in church-related schools see *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979).

*v. Sheehan,* 707 F.2d 355 (8th Cir.1983), a priest, in the Roman Catholic Church brought an action against an archbishop of that church for defamation on the basis of the disclosure of a psychiatrist's report by the archbishop about the priest. A district court held that the defamation claim was barred by the statute of limitations and the priest sought to amend his complaint to allege a violation of due process. The district court, however, denied the motion for leave to amend and the United States Court of Appeals for the Eighth Circuit affirmed stating:

> The allegations of combination, conspiracy, and concerted course of action contained in the proposed amended complaint might arguably state a claim for fraud or collusion, particularly when viewed under the *Haines v. Kerner* [404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1974)] standard of liberal construction for pro se pleadings. Significantly Milivojevich did not foreclose " 'marginal civil court review' under the rubrics of 'fraud' or 'collusion' when church tribunals act in bad faith for secular purposes." In the instant case, however, Kaufmann's claims relate to his status and employment as a priest, and possibly to other matters of concern with the church and its hierarchy, and go to the heart of internal church discipline, faith, and church organization, all involved with ecclesiastical rule, custom, and law.... In spite of Kaufmann's argument, the proposed amendments to the complaint deal only with matters of religion and there is no allegation that we can construe in any other light. 707 F.2d at 358–59. (emphasis added).

In this case the plaintiff's claim relates to his status and employment as a pastor and to matters of concern with the church and its ecclesiastical hierarchy. Indeed, Count VI of the plaintiff Milton Hafner's complaint alleges that Roy Knoll as Executive Secretary of the Ontario District, exceeded his authority apparently as defined by the Constitution of the Lutheran Church-Missouri Synod.

Although decided before the *Serbian Eastern Orthodox Diocese* but after the *Mary Elizabeth Blue Hull Memorial Presbyterian Church* case, the case of *McClure v. Salvation Army,* 460 F.2d 553 (5th Cir.1972) is relevant progeny of that 1969 decision of the Supreme Court of the United States. In *McClure,* a former ordained minister of the Salvation Army brought suit alleging that she had been a victim of discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964. In affirming the district court's dismissal for lack of subject matter jurisdiction, the Court of Appeals for the Fifth Circuit stated:

> An application of the provisions of Title VII to the employment relationship which exists between the Salvation Army and Mrs. McClure, a church and its minister, would involve an investigation and review of these practices and decisions and would, as a result, cause the State to intrude upon matters of church administration and government which have so many times before been proclaimed to be matters of a singular ecclesiastical concern. Control of strictly ecclesiastical matters could easily pass from the church to the State. The church would then be without the power to decide for itself, free from state interference, matters of church administration and government.
>
> Moreover, in addition to injecting the State into substantive ecclesiastical matters, an investigation and review of such matters of church administration and government as a minister's salary, his place of assignment and his duty, which involve a person at the heart of any religious organization, could only produce by it coercive effect the very opposite of that separation of church and State contemplated by the First Amendment. 460 F.2d at 560.

To avoid a subject matter constitutional jurisdictional infirmity, the Fifth Circuit held that Congress did not intend for Title VII of the Civil Rights of 1964 to regulate the employment relationship between a church and its minister. Two years later

the same court in *Simpson v. Wells La-Mont Corp.*, 494 F.2d 490 (5th Cir.1974), faced a similar issue. Again, the plaintiff was a minister and again the defendant was his church. In this case the minister's first sermon apparently displeased the members of his congregation and shortly thereafter, the Circuit of the United Methodist Church, which had employed him, relieved him of his charge. The minister brought suit pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986. The Court of Appeals affirmed the district court's dismissal for lack of subject matter jurisdiction and stated that the interaction between the church and its pastor is an integral part of church government. The relationship between an organized church and its minister is its life blood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern. The initial function of selecting a minister is a matter of church administration and government. So are the functions which accompany retention and retirement.

█ The aforesaid authorities lead this court inescapably to the conclusion that this court lacks subject matter jurisdiction over this dispute between a minister and his church regarding the conditions of his employment and post-employment obligations. Therefore, on that basis alone the motions to dismiss and to grant summary judgment to the defendants are well taken and should be granted.

## II.

### A.

There are also more mundane, traditional and jurisdictional problems relating to whether or not any of the defendants in this case are subject to the personal jurisdiction of this court. There can be no doubt that the Lutheran Church-Missouri Synod as a church enity does "do business" in this district and might be subject to the personal jurisdiction of this court were it not for the aforesaid inhibitions imposed by the First Amendment of the Constitution of the United States as last interpreted by the Supreme Court in the *Serbian Eastern Orthodox Diocese* case.

█ With respect to the remaining defendants a more serious problem arises as to the necessary contacts with the State of Indiana under Indiana Trial Rule 4.4. This court has been the author of a number of opinions which deal with the outer due process limits of that Indiana Trial Rule. See *Stoutco Inc. v. Amma, Inc.*, 570 F.Supp. 1376 (N.D.Ind.1983) and *Oddi v. Mariner-Denver, Inc.*, 461 F.Supp. 306 (S.D.Ind.1978). For an early word on this subject by this judge see *Security Credit Acceptance Corp. v. State of Indiana*, 144 Ind.App. 558, 247 N.E.2d 825 (1969) and for an early word by this judge speaking for this court on the subject, see *Valdez v. Ford, Bacon & Davis Texas, Inc.*, 62 F.R.D. 7 (N.D.Ind.1974). See also, *Cumis Insurance Society, Inc. v. South-Coast Bank*, 587 F.Supp. 339 (N.D.Ind.1984); *Subacz v. Town Tower Motel Corp.*, 567 F.Supp. 1308 (N.D.Ind.1983); *W & W. Farms, Inc. v. Chartered Systems*, 542 F.Supp. 56 (N.D.Ind.1982). Except for the Lutheran Church-Missouri Synod none of the defendants in this case have had any relevant contact with the State of Indiana that would subject them to the personal jurisdiction of this court. Generally, a corporate officer who has contact with a forum only in regard to the performance of his official duties is not subject to the personal jurisdiction of that forum. A person whose contact with the forum stems from acts performed in a corporate capacity is generally not subject to personal jurisdiction in the forum in his individual capacity. See *Forsythe v. Overmyer*, 576 F.2d 779 (9th Cir.1978) and *K-Mart Corp. v. Knitjoy Mfg. Inc.*, 534 F.Supp. 153 (E.D.Mich.1981), supplemented 542 F.Supp. 1189. See also C. Wright, A. Miller, *Federal Practice and Procedure* § 1069 at page 58 (supplement 1984).

█ Reverend Stanfel has never lived in Indiana, has attended religious meetings in Indiana unrelated to this case and has cor-

responded with Milton Hafner while Milton Hafner has lived in Middlebury, Indiana and has corresponded with business enterprises in Elkhart, Indiana in regard to Milton Hafner's moving expenses on several occasions. He did attempt to resolve the differences here by attending a meeting in Fort Wayne, Indiana. It would be stretching the most liberal intendment of Indiana Trial Rule 4.4 to assert personal jurisdiction over Reverend Stanfel on the basis of his attendance of a settlement conference in this district in his official capacity. The remaining defendants have had virtually no contact of any kind that is relevant to this case in this district or state. Here, the quantity and quality of the contacts with Indiana are in sharp contrast to those in *Burger King Corp. v. Rudzewicz,* —— U.S. ——, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

### B.

Some of the defendants also have asserted that the courts in Ontario, Canada are more convenient forum and have requested the dismissal on that basis. This is certainly the slenderest of all the reeds which the defendants attempt to lean upon for the dismissal of this case. It is correct that when a foreign country is a more convenient forum an action may be dismissed for improper venue on that bases. In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) [2], the Supreme Court identified several factors relevant as to whether a district court should dismiss a case for forum non conveniens:

A. Private interest factors

  1. Relative east of access to sources of proof.

  2. Availability of compulsory process for attendance of unwilling, and the

cost of obtaining attendance of willing, witnesses.

  3. Possibility of view of premises, if view is appropriate.

  4. Enforceability of a judgment.

  5. All other practical problems that make trial of the case easy, expeditious and inexpensive.

B. Public Interest Factors

  1. Congestion of the Court's docket.

  2. Burden of imposing jury duty on a community which has no relation to the litigation.

  3. Local interest in having localized controversies decided at home.

  4. Whether local or foreign law will govern.

330 U.S. at 508–09, 67 S.Ct. at 843.

Certainly one can make a very strong argument that the above factors announced by the Supreme Court in *Gulf Oil Corp.* lean heavily in favor of Ontario, Canada as the most convenient forum in which to decide this case. (This court does not know, has not been advised, and does not attempt to speculate on whether or not the provisions of Canadian law would inhibit the courts of that jurisdiction from attempting to decide and interpret the provisions of this church constitution.)

The only connection that this court has with this case is that the fact that after the dispute arose between Milton Hafner and his church he moved into this district.

Again, on this issue the Lutheran Church-Missouri Synod stands on a different bases than the remaining defendants. This court doubts that it would be any more inconvenient for the Lutheran Church-Missouri Synod to try this case in Indiana that it would to try it in Ontario, Canada. However, it would appear that the remaining parties are indeed indispens-

---

**2.** This court's independent research, through West Law, indicates that *Gulf Oil Corp. v. Gilbert* has been cited no less than 800 times since 1948. The most recent is *Burger King Corp. v. Rudzewicz,* —— U.S. ——, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). See especially footnote 20 which cites both 28 U.S.C. 1404(a) and *Gulf Oil*

*Corp. v. Gilbert* in precisely the same vein. For a recent example of a district court dismissing a case on the bases of *forum non-conveniens* where the most convenient forum is in a foreign country, see *Stamoulos v. Howland Panama, S.A.,* 610 F.Supp. 453 (E.D.La.1985).

able to this dispute and that it would be very inconvenient for the remaining defendants to try this case in the Northern District of Indiana.

## C.

■ There is an additional problem referred. to in the parantheses above. This problem relates to the choice of law that might be applicable even if this court had subject matter jurisdiction. Since this is alleged to be a contract dispute the "most intimate contact" test must be applied by this court with reference to the choice of law. See *Suyemasa v. Myers*, Ind.App., 420 N.E.2d 1334 (1981). Even assuming that the plaintiff here could get over the First Amendment subject matter jurisdictional hurdle the law of Canada would have to be applied. This would be true whether or not the bases of the plaintiffs' claim sound in tort or in contract. It is now beyond any dispute that Indiana follows the *lex loci delicti* choice of law rule for torts. See *Zandman v. Joseph*, 102 F.R.D. 924, 930 (N.D.Ind.1984); and see also *Eby v. York-Division, Borg-Warner*, Ind.App., 455 N.E.2d 623, 626 (1983).

The factual setting of *Schertenleib v. Traum*, 589 F.2d 1156 (2d Cir.1978), illustrates the application of these ideas. The plaintiff in that case was a Swiss attorney who was suing a New York attorney on the basis of events which took place in Geneva, Switzerland. The New York attorney controlled several foreign mutual funds and had retained the Swiss attorney to sue the funds. The Swiss attorney caused the Attorney General of Switzerland to file a criminal complaint against the funds. The Swiss attorney alleged that he, the Swiss attorney, dropped the criminal matter because the New York attorney promised to redeem the share of the investors. The Swiss attorney further alleged that the New York attorney breached the settle-

ment agreement and wasted the assets of the funds. Finally, the Swiss attorney alleged that the New York attorney then filed criminal charges against him (the Swiss attorney) in Switzerland and caused the Swiss attorney to be arrested. The district court in New York dismissed the complaint and the Court of Appeals for the Second Circuit affirmed, noting that the balance of factors weighed heavily in favor of Switzerland as the proper forum. The court noted that none of the events occurred in the United States; none of the sources of proof were in the United States; all of the witnesses were in Geneva except the defendant; the expenses of bringing witnesses to the United States would be prohibitive; foreign citizens were not subject to compulsory process in the United States; Swiss law would govern the dispute; and several documents would have to be translated from French into English, imposing additional expenses. There is certainly no need for translation here but the other factors identified in *Schertenleib* are significantly comparable to those in this case.

■ It is correct that the Supreme Court of the United States has not decided whether federal or state law govern the dismissal of a diversity case on *forum non conveniens*. See *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).[3] Indiana courts, however, consider the same factors as applying federal law. *Forum non conveniens* is governed by Indiana Trial Rule 4.4(C), which provides in pertinent part:

> Jurisdiction under this rule is subject to the power of the court to order the litigation to be held elsewhere under such reasonable conditions as the court in its discretion may determine to be just.

> In the exercise of that discretion, the court may appropriately consider such factors as:

---

3. The reasoning and result in *Piper* is of particular moment here. *Gulf Oil v. Gilbert* is reaffirmed. The factual setting is similar. *Scher-* *tenleib* is cited with approval in footnote 21. It is very supportive of the decision here announced.

(1) Amenability to personal jurisdiction in this state and in any alternative forum of the parties to the action;

(2) Convenience to the parties and witnesses of the trial in this state in any alternative forum;

(3) Differences in conflict of law rules applicable in this state and in the alternative forum; or

(4) Any other factors having substantial bearing upon the selection of a convenient, reasonable, and fair place of trial.

Certainly there is an overlay between the factors considered in Indiana Trial Rule 4.4(C) and those identified by Justice Jackson for the Supreme Court in *Gulf Oil Corp. v. Gilbert.* Factors number 1 and 2 in *Gilbert* are identical. The fourth factor is significantly extensive enough to encompass the other *Gulf Oil Corp.* factors. Thus, under both Indiana and federal law the dismissal of this case could be based upon *forum non conveniens.* The values spelled out by Justice Jackson in *Gulf Oil v. Gilbert* remain alive and well and are the conceptional backdrop for section 1404(a) of Title 28 of the United States Code. The suggestion is here made by the plaintiffs that the *Gilbert* factors have been replaced by 28 U.S.C. § 1404(a). Such is not the case. The historical and revision notes in the United States Code Annotated indicates that section 1404(a) has been in effect since 1948 and grew from a felt need announced in *Baltimore & Ohio R. Co. v. Kepner,* 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28 (1941). Where the more convenient forum is a foreign court section 1404(a) would not be directly applicable although the case law developed under it may be considered.

### D.

Some of the defendants make an argument that these are tort claims that would be subject to the two year statute of limitations as found in 6 Ind.Code § 34–1–2–2(1) (1982). This court chooses not to bottom any decision here on that bases.

This case is DISMISSED. Each party will bear its own costs. SO ORDERED.