Lyle M. KNUTH, Plaintiff,

v.

The LUTHERAN CHURCH MISSOURI SYNOD, a Missouri Corporation; Karl L. Barth; and Harvey Krueger, Defendants.

No. 85–1002.

United States District Court, D. Kansas.

Sept. 8, 1986.

Larry Toomey, Stratton, Russell & Toomey, Wichita, Kan., for plaintiff.

Stephen M. Kerwick, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendants' motions to dismiss on jurisdictional grounds. Defendant Karl L. Barth moves the court to dismiss all claims against him for the reason that this court lacks personal jurisdiction over him. All defendants move to dismiss Counts I and III of plaintiff's complaint for lack of sub-

ject matter jurisdiction of this court. The court will first consider defendant Barth's motion.

Plaintiff Knuth brings this action for damages relating to his removal from the clergy roster of the Lutheran Church Missouri Synod (LCMS) and his unsuccessful attempts to regain that status. Plaintiff was ordained a minister with the LCMS on June 23, 1963, and remained a minister until July of 1977. On May 23, 1976, plaintiff informed the congregation of the church that he was then serving in Wisconsin that he would resign effective July 24, 1976. At that time, defendant Rev. Dr. Karl L. Barth was the district president of the South Wisconsin District of the LCMS. Defendant Barth had the responsibility for taking the administrative actions with regard to plaintiff, including the removal of Knuth's name from the clergy roster and the rendering of recommendations to Church bodies as to plaintiff's applications for reinstatement as an active minister or as Candidatus Reverendi Ministeri (CRM). In June of 1982, defendant Barth moved to the State of Missouri where he served as president of Concordia Seminary.

Defendant Barth's contact with the State of Kansas is extremely limited. Besides one social visit to Kansas, Barth's only other contact consists of three letters written to Kansas residents. The first two letters were written to plaintiff Knuth. One informing plaintiff that his letter of October 23, 1980, would be presented to the Council of Presidents, and the second relating that his application had been denied. Defendant Barth wrote the third letter in response to a letter from Christ Lutheran Church in Elkhart, Kansas, stating that plaintiff was not eligible for call as he was not on the clergy roster of the synod. Plaintiff also avers that other people have communicated with defendant Barth on plaintiff's behalf in an effort to convince him that plaintiff was wrongfully removed from the clergy roster. Plaintiff states in his memorandum in opposition to the motion to dismiss that defendant Barth had conversations with the Kansas district president concerning plaintiff, but this statement is not supported by the complaint nor an affidavit.

Plaintiff bears the burden of making a prima facie showing that statutory and due process requirements are satisfied permitting the court to exercise personal jurisdiction over defendant. *Carrothers Const. Co. v. Quality Service & Supply*, 586 F.Supp. 134, 135–36 (D.Kan.1984). The court may consider affidavits and other documentary evidence submitted by the parties in reaching its decision. *Thermal Insulation Systems v. Ark-Seal Corp.*, 508 F.Supp. 434, 437 (D.Kan.1980). Allegations in the complaint are accepted as true to the extent they are uncontroverted by submitted affidavits. *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). Where there are conflicting affidavits, factual disputes are resolved in favor of plaintiff, and plaintiff's prima facie showing will withstand the moving party's presentation. *Behagen*, 744 F.2d at 733. The plaintiffs are entitled to the benefit of any factual doubts. *Ammon v. Kaplow*, 468 F.Supp. 1304, 1309 (D.Kan.1979).

The court performs a two step analysis when considering personal jurisdictional questions. First, it is determined whether the defendant's conduct is within a provision of the Kansas Long-Arm Statute. The court next determines whether the exercise of jurisdiction comports with the due process requirements. *Thermal Insulation Systems, Inc. v. Ark-Seal Corp.*, 508 F.Supp. at 436. No reference to the Kansas Long-Arm Statute is found in either the complaint or plaintiff's response to the motion to dismiss. For the court to assert jurisdiction over defendant both the statutory and constitutional requirements must be satisfied. *Thermal*, 508 F.Supp. at 436–437. None of the acts specified in the Kansas Long-Arm Statute upon which a person is considered to have submitted himself to the jurisdiction of the court appears applicable to this case. K.S.A. 60–308(b). Defendant Barth has had no relevant con-

tact with the State of Kansas that would bring him within the personal jurisdiction of this court. Barth's letters and communications to residents of Kansas were made solely in his official representative capacity with the LCMS. An individual's actions, solely in the capacity as a corporate officer, does not create personal jurisdiction over that individual even though the state may have personal jurisdiction over the corporation. *Wilshire Oil Company of Texas v. Riffe*, 409 F.2d 1277, 1281 n. 8 (10th Cir. 1961); *Hafner v. Lutheran Church-Missouri Synod*, 616 F.Supp. 735, 739 (D.Ind. 1985). The court does not have personal jurisdiction over defendant Barth under the Kansas Long-Arm Statute.

Assuming a provision of the Kansas Long-Arm Statute addressed the circumstances of this case, the court would still find that the exercise of jurisdiction in this case would offend the traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The due process clause protects individuals from being subject to the judgments of a foreign forum without a fair warning that a certain activity may bring them under the jurisdiction of that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The nature and connection of defendant's activities to the forum must be such that he should reasonably anticipate being hauled into court there. *Burger King*, 471 U.S. at 471–77, 105 S.Ct. at 2181–84, 85 L.Ed.2d at 540–43. It is not reasonable for defendant Barth to anticipate that while acting in his official capacity his infrequent correspondence with plaintiff and a church congregation in Kansas would subject him to suit in Kansas. Simply by characterizing Barth's conduct as now fraudulent does not make him subject to this court's jurisdiction. An exercise of jurisdiction over defendant Barth under these facts would not comport with the due process requirements.

Defendants move to dismiss Counts I and III of plaintiff's complaint for lack of subject matter jurisdiction under the prohibitions of the First and Fourteenth Amendments. Defendants' motion centers upon a proper construction of the Supreme Court's decision in *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). In *Serbian*, the court stated:

> Consistently with the First and Fourteenth Amendments "civil courts do not inquire whether the relevant (hierarchical) church governing body has power under the religious law (to decide such disputes).... Such a determination ... frequently necessitates the interpretation of ambiguous religious law and usage. To permit civil courts to probe deeply enough into the allocation of power within a (hierarchical) church so as to decide religious law (governing church polity) ... would violate the First Amendment in much the same manner as civil determination of religious doctrine." *Md. & Va. Churches v. Sharpsburg Church*, 396 U.S. 367, 369, 24 L.Ed.2d 582, 90 S.Ct. 499 (1970) (Brennan, J., concurring), for where resolution of the disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them. *Ibid.*

426 U.S. at 708–09, 96 S.Ct. at 2380. Plaintiff considers his allegations sufficient to invoke the subject matter jurisdiction of this court through the dictum found in *Gonzalez v. Archbishop*, 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131 (1929).

Count III of plaintiff's complaint alleges exclusively claims against defendant Karl Barth who has been found as not within the court's personal jurisdiction. Consequently, defendant's motion to dismiss for lack of subject matter jurisdiction only relates to Count I of plaintiff's complaint. In that count plaintiff primarily alleges that

defendant LCMS breached its contractual obligations to plaintiff, breached its implied duty of good faith and fair dealing to plaintiff, denied plaintiff his due process and contractual rights, and through its agent misled plaintiff and permitted certain officers of LCMS to intentionally and maliciously frustrate his attempts to be recognized on the clergy roster. Plaintiff alleges his rights are outlined in the LCMS' Constitution, Articles of Incorporation, By-laws, official publications, synodical handbook, and rules of procedure. Besides the individual actions of the district presidents, defendant contends that these rule and procedures were also violated by the Council of Presidents, Commission on Appeals of the LCMS, and Commission on Adjudication.

The Supreme Court in *Serbian* considered the case where a bishop and others filed suit in state district court to have himself declared the true bishop of a diocese and to enjoin church officials from interfering with certain assets owned by the diocese. The Supreme Court rejected the state court's decision to exercise jurisdiction over this internal church dispute. Two themes emerge from this decision: (1) civil courts should not disturb the decisions of ecclesiastical tribunals regarding religious law and polity; and (2) the government should avoid becoming entangled in essentially religious controversies. The Supreme Court traced the rule which limited the role of civil courts in the resolution of religious disputes back to the decision in *Watson v. Jones,* 13 Wall 679, 20 L.Ed. 666 (1872) wherein the court stated:

> (W)henever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them.
>
> ... It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all

cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.

13 Wall, at 727, 729. This relatively clear separation of church and state was clouded in later decisions.

Marginal civil court review was discussed in *Gonzalez* as a possibility in those cases challenging a decision of ecclesiastical tribunals as a product of "fraud, collusion, or arbitrariness." *Serbian,* 426 U.S. at 712, 96 S.Ct. at 2382. The Supreme Court in *Serbian* noted, however, that his narrow exception was strictly dictum in the *Gonzalez* decision and that the court, since the decision, had not given any concrete content to or had applied this exception. *Id.* In *Serbian,* the court eliminated arbitrariness as a ground for civil court review of church tribunals:

> We have concluded that whether or not there is room for "marginal civil court review" under the narrow rubrics of *"fraud" or "collusion" when church tribunals act in bad faith for secular purposes,* no "arbitrariness" exception— in the sense of an inquiry whether the decisions of the highest ecclesiastical tribunal of an hierarchial church complied with church laws and regulations—is consistent with the constitutional mandate that civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchial polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in the sense "arbitrary" must inherently entail inquiry into the procedures that cannon or ecclesiastical law supposedly requires the church adjudicatory to follow, or else into the substantive criteria by which they are supposedly to decide the ecclesiastical question. But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of a civil court inquiry, and that a

civil court must accept the ecclesiastical decisions of church tribunals as it finds them. (emphasis supplied.)

426 U.S. at 713, 96 S.Ct. at 2382. Therefore the Supreme Court has overruled in part its earlier decision in *Gonzalez v. Archbishop,* 280 U.S. 1, 50 S.Ct. 5, without determining whether judicial review is appropriate when church tribunals act in fraud or collusion for secular purposes. Nevertheless, the Court emphasized the overriding constitutional concern that civil courts accept the decisions of the highest religious judicatories on matters of church discipline, organization, faith or religious law.

The plaintiff considers his complaint as not requesting the court's interference in the determination of the LCMS on plaintiff's fitness for the ministry. Plaintiff rather believes the only issue in this case is "whether or not the plaintiff suffered violations of his contractual rights by the fraud, collusion, conspiracy and arbitrary actions of the LCMS, its agents and representatives, and specifically the individual defendants named in plaintiff's complaint." (Plaintiff's Response, p. 4). Count I of plaintiff's complaint is couched in individual allegations of breaches of contractual duties, implied duties of good faith, and denial of due process. Plaintiff does allege in one paragraph that he was misled and that his efforts to be recognized on the clergy roster were intentionally and maliciously frustrated. The term "fraud" is not found in Count I of plaintiff's complaint. The court, nevertheless, will indulge plaintiff with a liberal construction of his complaint as to include an allegation of fraud or collusion.

■ Whether an exception for fraud or collusion exists is still not resolved by the Supreme Court. For purposes of this motion, the court will determine whether the facts of the present case fall into the narrow exception for fraud or collusion. In short, the court finds the exception inapplicable to the alleged facts of the case.

To entertain plaintiff's complaint, this court would be forced to inquire into the procedures set forth by canon or ecclesiastical law, which plaintiff alleges the various church organs and representatives are bound to follow. The Constitution of the Lutheran Church-Missouri Synod is the organic document of that church and is "basically and fundamentally a religious doctrine." *Hafner v. Lutheran Church-Missouri Synod,* 616 F.Supp. at 737. In construing these religious documents and doctrines, the court would usurp the rights of the highest religious bodies to construe their own church laws. *See Serbian,* 426 U.S. at 714, 96 S.Ct. at 2382. "Due process" and "fundamental fairness" are constitutional and secular concepts that are not relevant to ecclesiastical decisions which by their religious nature are reached and accepted as matters of faith. *Serbian,* 426 U.S. at 714–715, 96 S.Ct. at 2382–83. Plaintiff's claims relate to his rights as a minister and former minister which "go to the heart of eternal church discipline, faith, and church organization, all involved with ecclesiastical rule, custom and law." *Kaufmann v. Sheehan,* 707 F.2d 355, 358 (8th Cir.1983).

The contractual rights and duties of good faith alleged in plaintiff's complaint are not a matter of secular law and would require this court to undertake in a searching and impermissible inquiry into church polity. *Serbian,* 426 U.S. at 723, 96 S.Ct. at 2387. The fact that plaintiff is seeking damages for the breach of these contractual rights rather than seeking to enforce these contractual rights, i.e. reinstatement, is a distinction from the *Serbian* decision that lacks significance. The Supreme Court, instead of emphasizing the relief sought, focused upon the inappropriate role of the court in interpreting the procedures that ecclesiastical law requires of the church bodies in deciding their ecclesiastical questions. 426 U.S. at 713, 96 S.Ct. at 2382. The *Serbian* decision does not sustain the distinction advanced by plaintiff in the present case.

Secular aspects may conceivably exist in the relationship between a minister in the organized church, but the minister plays a

particularly sensitive role in any church organization. *Kaufmann v. Sheehan,* 707 F.2d at 359. Through the minister the church is able to accomplish its purpose of conveying its religious message to its members. Because of the significant role of the ministers or priests, the relationship between the church and clergy "must necessarily be recognized as applying ecclesiastical concern." *Hafner,* 616 F.Supp. at 739. The freedom to select clergy is constitutionally protected against state interference as being part of the free exercise of religion. *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 116, 73 S.Ct. 143, 154, 97 L.Ed. 120 (1952). A church's existence may well depend upon whom it selects to preach its doctrine. *Rayburn v. General Conf. of Seventh-Day Adventists,* 772 F.2d 1164, 1168 (4th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 739.

The alleged acts of defendants are undeniably matters of church administration which do not serve a secular purpose. Any decision regarding plaintiff's rights to be on the clergy roster would necessarily compel this court to construe ecclesiastical doctrine and to set in review of the highest church bodies on decision essentially religious in nature. While the wall separating church and state may vary with the subject matter, the court believes that matters regarding a relationship between clergy and the church are surrounded by an imposing and, in most cases, insurmountable barrier.

IT IS THEREFORE ORDERED that the motion to dismiss Karl L. Barth from all claims for lack of personal jurisdiction is granted; IT IS FURTHER ORDERED that the motion to dismiss Count I of plaintiff's complaint for lack of subject matter jurisdiction is granted.