Wilfred A. Waltemade, J.
Plaintiff, who is a duly ordained Rabbi, seeks injunctive relief against the defendant Orthodox Jewish Congregation, viz. (a) restraining it from discharging him (b) enjoining the interference with the performance of his duties as the Rabbi of said Congregation, and (c) directing the defendant to continue the payment of plaintiff’s salary. Plaintiff avers that the foregoing remedies should be enforced against the defendant in compliance with the findings of a Rabbinical Court (Beth Din) which had rendered a decision on December 13, 1961.
During the trial, this court, sitting without a jury, invoked the broad powers of equity which allow the disposal of all matters at issue and did permit the plaintiff to add causes of action for breach of a written contract of employment providing for a salary of $60 per week, which, according to the plaintiff, had been renewed by its terms for one year commencing on January 1,1962. Plaintiff concedes that a credit of $120 is to be allowed to the defendant for 2 weeks’ salary paid to the plaintiff in January, 1962. Alternative relief is sought in another added cause of action in quantum meruit for 21 weeks’ salary in 1962, less the 2 weeks’ salary already paid to plaintiff.
The plaintiff’s contention that the proceedings before the Rabbinical Court was an arbitration hearing at which the: defendant appeared after a ivritten submission, is denied by the defendant which also raises the defense that the written contract of employment between the parties was duly terminated on December 31,1961 by timely notice to the plaintiff.
The plaintiff, who had served as Rabbi of the Congregation since 1951, last entered into a written contract of employment with the corporate Congregation on October 29, 1959. By its terms the agreement was to expire on December 31, 1961, subject to its automatic renewal for periods of one year unless the defendant gave plaintiff written notice of cancellation at least 60 days prior to each successive expiration date.
During 1961 conflicts developed between plaintiff and some officers and members of the Congregation. On October 27, 1961, a postal card notice was sent to defendant’s members calling for a special congregational meeting to be held on October 29, 1961 “regarding Rabbi Kupperman’s contract”. At the meeting, a majority voted to refer the determination of the renewal or termination of said contract to the defendant’s board of directors. Immediately upon the adjournment of the special congregational meeting, the board of directors, without prior notice, met and voted to cancel the plaintiff’s contract as of *110 December 31,1961. Accordingly, the president of the Congregation, under date of October 30, 1961, notified the plaintiff in writing that his services were terminated as of December 31, 1961. Thereafter on November 2, 1961, another special meeting was held by the Congregation which voted to affirm the action of the board of directors in terminating the plaintiff’s services on the last day of 1961. Notice of this last special meeting was given to the membership by telephone or personal contact.
On November 28, 1961, the plaintiff, together with 7 other members of the Congregation including its secretary and its 2 gaboyim (lay leaders) and 23 worshippers appeared before the Beth Din and executed a writing which the plaintiff contends was a binding submission of the controversy to the Beth Din (Rabbinical Court) composed of 5 Rabbis. This Rabbinical tribunal had been convoked by the Rabbinical Board of The Bronx at the request of the plaintiff to hear and determine the disputes between the parties. A hearing was held on December 13, 1961, and a written decision, favorable to the plaintiff, was rendered and upon which this suit for injunctive relief is predicated.
After December 31,1961 and up to May 27, 1962, the plaintiff “ Rabbi performed the same duties in these months in 1962 as he had performed them in ’61 and in ’60 and for the 10 or 11 years he’s been there”. On May 27, 1962, the Congregation changed the locks on the doors of its synagogue on East 169th Street, discontinued holding its religious rites thereat and thereafter used its Hebrew school on Clarke Place for worship services without the presence of the plaintiff Rabbi.
The first issue to be determined by this court is what are the powers of a religious corporation, formed as an Orthodox Jewish Congregation, over the calling, settlement, dismissal or removal of its Rabbi.
The defendant is a religious corporation organized under article 10 of the Religious Corporations Law. Its certificate of incorporation was filed with the Bronx County Clerk on December 13, 1932. Prior to that date, the Congregation had been located in The Bronx for some years after removing from Harlem where it was organized in 1919 as “ Society Nusach Sephard of Harlem” for the purpose of “an orthodox synagogue and sick benefit assistance ”. The Harlem society had been incorporated on March 16, 1923 under the name of “ Congregation Nusach Sward of Harlem, Inc.” but this corporation was dissolved by proclamation of the Secretary of State of New York. It is conceded that the constitution and by-laws promul *111 gated by the old Harlem organization have been adopted and are still in use by the defendant corporate congregation.
This Congregation’s constitution and by-laws are silent on the matter of calling or discharging a Rabbi. Concerning the same matter, the only reference in article 10 of the Religious Corporations Law under which defendant was incorporated, is found in section 200 which recites “ the trustees of an incorporated church to which this article is applicable, shall have no power to settle or remove or fix the salary of the minister”. (Emphasis supplied.) In the statute, the term “minister” is defined as including a duly authorized Rabbi. (Religious Corporations Law, § 2.)
The general provisions of the Religious Corporations Law are contained in article 2 thereof and section 5 of said article recites the same prohibition against the independent action of trustees with respect to the settling or dismissal of a Rabbi. Section 25 of article 2 entitled “ Pastoral relation ” apparently restricts the powers of at least some religious corporations for it provides that “ No provision of this chapter authorizes the calling, settlement, dismissal or removal of a minister, or the fixing or changing of his salary, and a meeting of a church corporation for any such purpose shall be called, held, moderated, conducted, governed and notice of such meeting given * * * according to the * * * practice, discipline, rules and usages of the religious denomination or ecclesiastical governing body, if any, with which the church corporation is connected ”.
There is no evidence in this record to sustain a finding that the defendant religious corporation is subject to any such practice, discipline, rule or usage. We have the authoritative testimony of Rabbi Mendel Shuck, president of the Rabbinical Board of The Bronx for 4 years and a member of the board for 33 years, who testified on cross-examination, viz.:
“ Q. Rabbi Shuck, when a congregation is newly-formed, must they come to you for permission to form? A. No.
“ Q. Do they have to have your permission to form a congregation? A. No, they don’t need it.
“ Q. Do they require your permission to hire a Rabbi? A. No. No.
“ Q. Did they have your approval to hire Rabbi Kupperman? A. They don’t need approval.”
In addition, the plaintiff conceded that the Rabbinical “ Board never saw the contract (of employment) before it was executed; its approval was never sought; it never examined it; it never at any time knew of its existence until the dispute arose
*112 From the foregoing, it would also appear that both an unincorporated Orthodox Jewish Congregation, and a religious corporate entity of the same faith, are each free to organize and to engage a Rabbi without reference to or approval from an hierarchy.
No reported case could be found in which a Rabbi was involved in a dispute with his congregation such as the case under consideration. The reported cases concern themselves with congregations of other denominations. It has been generally held that the pastoral relationship with these congregations is an ecclesiastical matter with which the courts shall not interfere because the calling and recalling of the spiritual leader is linked with a higher or superior religious body or hierarchy. In the similar but distinguishable Walker Mem. Baptist Church v. Saunders (285 N. Y. 462) although the Baptist Church, similar to the case at bar, did not have a “ central governing body ”, nevertheless the congregation in the Walker case “had subscribed to Hiscox’ codification of the principles, policies, customs and usages of the Baptist Church ” thereby rendering that congregation subject to such ecclesiastical restrictions in the calling and discharge of its pastor.
No such subscription to regulations bearing on the appointment or discharge of a Rabbi is found in the case at bar. Parenthetically, it is pertinent to observe that according to basic Jewish practices, only a quorum of 10 men (minyon) is needed to conduct services and the presence of the clergy is neither required nor prohibited. Neither the contract of employment between the parties nor the constitution and by-laws of the defendant make any reference to a higher or superior ecclesiastical authority. The contract, which formalized the prior existing relationship between the parties, aside from setting forth the salary to be paid, contained provisions regarding notice of renewal or cancellation at the option of the parties and restrictive covenants effective at the termination of the contract —all of which cast that document in the category of a mundane contract of employment rather than a spiritual call concluded through or with a governing ecclesiastical body.
The record of this case discloses, too, that although this religious Congregation was founded in 1919 and was incorporated under its present title in 1932, Rabbi Kupperman was its first Rabbi and he arrived in 1951.
The court is constrained to conclude that the defendant is empowered as an autonomous congregation to call, settle, dismiss or remove its clergy, and therefore, because of the nature of the structure of this religious faith, the appointment and *113 tenure of this ordained spiritual leader does not involve questions of discipline and doctrine but is a temporal matter about which the court may inquire and consider in the light of the civil contractual rights and obligations of the parties.
The legality of the contract of employment dated October 29, 1959 is admitted by the plaintiff but it is for the court to determine whether the corporate Congregation gave proper notice to the plaintiff to effect the cancellation of his services as of December 31,1961.
We have heretofore noted that section 200 of article 10 of the Religious Corporations Law prohibits the trustees of an incorporated church from settling or removing a Rabbi. To accomplish those acts, the action of the corporate congregation is required.
The by-laws of the defendant Congregation contain no provisions for the manner in which regular or special meetings of the Congregation are to be called. The court therefore resorts to section 194 of article 10 of the Religious Corporations Law which prescribes that a notice of a special meeting, stating the time and place of such meeting and the business to be transacted thereat shall be given at a regular service of such church for public worship on each of two days, at least one week apart, next preceding such special meeting, or if no public worship be held during that period, by conspicuously posting such notice in writing upon the outer entrance to the principal place of worship of such congregation. The notice is to be given by the Rabbi of the Congregation and if he refuses, then by any officers of such Congregation.
The court finds that the special meetings of the defendant Congregation on October 29, 1961 and November 2, 1961, held pursuant to the postal card notices to the members were not called in the manner prescribed in the section of law referenced above. Consequently, the actions taken at these two meetings are a nullity (Matter of Kaminsky, 251 App. Div. 132, affd. 277 N. Y. 524). Written notice by mail of the impending meeting cannot be substituted for the two announcements at the religious services, or, the posting of the notice at the place of worship when no services are to be held prior to the meeting. Notices of meetings by mail can only be used to augment the statutory provisions for notice. It follows, therefore, that the letter of October 30, 1961, advising the plaintiff that his services were terminated as of December 31, 1961, was not properly authorized at a meeting of the members of the defendant congregation duly called in accordance with the provisions of law. The contract of October 29, 1959 was not terminated by a proper notice *114 given to plaintiff 60 days prior to its termination date of December 31, 1961 and, accordingly, the contract was renewed for an additional period of one year commencing on January 1, 1962. The court further finds that the action of the defendant in closing the synagogue on May 27, 1962 constituted a breach of the contract by the defendant because the plaintiff was thereby prevented from performing his religious duties as the Rabbi of defendant Congregation.
Even though the court has found that the plaintiff’s contract of employment was renewed for one year ending December 31, 1962, it nevertheless is required to dispose of the plaintiff’s plea for equitable relief wherein he seeks the enforcement of the findings of the Rabbinical Court (Beth Din) in its decision of December 13,1961.
The plaintiff contends that the proceeding, before the Beth Din was an arbitration, and that his Exhibit 6 (and its translation) is a written submission to arbitrate the dispute between plaintiff and “ the members and worshippers of the synagogue.” This writing, dated November 28, 1961, contains the signatures of 31 persons. It is significant that of the signatories only 7 persons, in addition to the plaintiff, were actual members of the defendant corporate congregation; the 23 other persons were worshippers who admittedly were not dues-paying regular members of the Congregation as defined in its constitution and by-laws.
As the record of the trial stands, it is undisputed that at a special congregational meeting held on December 10, 1961, the members present voted unanimously against having the congregation represented at the Beth Din.
The court finds that the persons, who signed the November 28, 1961 writing which plaintiff maintains is a binding submission to arbitration, did so as individuals who had responded to the call of the Rabbinical Court. Not one of the signatories was empowered to act for or on behalf of the defendant corporate congregation.
Certainly, from the facts adduced at the trial, no statutory arbitration such as provided in the Civil Practice Act could be found. Additionally, no common-law arbitration is spelled out either since the very nature of such a contractual arrangement to arbitrate implies and requires a mutual agreement to settle differences between the parties coupled with a consensual submission by the disputants. Furthermore, in the contract of employment between the parties herein, there is no provision whatsoever for the submission of any dispute to arbitration.
*115 A Beth Din is an ecclesiastical court convoked to hear disputes between persons of the Jewish faith without resort to civil forums. This religious proceeding has come down through the ages from its origin in the first or Mosaic Period of the development of the Hebrew legal system as it is recorded in chapter 17, verses 9, 10, 11 and 12 of the Book of Deuteronomy which is a part of the Pentateuch of first five books of the Old Testament (1 Wigmore, A Panorama of the World’s Legal Systems).
The plaintiff makes the point that the defendant is bound by the determination of the Beth Din because no Orthodox Jewish person may refuse to respond to the summons of such a Rabbinical Court, nor may its findings be ignored. The testimony of the plaintiff supports this contention.
The court takes no issue with the spiritual authority of a Beth Din and acknowledges, too, that the Torah (first five books of the Old Testament), the Mischna (Codification) and the Gemara (Commentaries) of the Jewish or Talmudic Code provides for the imposition of certain penalties against those who disobey the Rabbinical Court, such as the denial of (a) religious burial rites, (b) admission of the offender’s children to the Hebrew schools, (c) the right to be counted in a quorum (minyon) in the synagogue, and denial of the admission of the offender’s wife to the synagogue. These are ecclesiastical sanctions against individuals which this court need not and does not disturb in order to determine that the respective rights of the defendant corporate entity and of the plaintiff are to be adjudicated under the applicable provisions of the civil law of the State of New York.
This court reiterates that in arriving at its decision, it respects the cognizance of the Beth Din over the religious life of the individual adherents of the Orthodox Jewish faith but the plaintiff sues the defendant herein as “ a religious and fraternal organization organized and existing under and by virtue of the laws of the State of New York ” as set forth in paragraph 2 of the complaint, which the defendant admits. Its corporate existence is derived from article 10 of the Religious Corporations Law. The judgment against the defendant will be enforced against the corporate entity and its assets. There is no claim, no intimation and no proof that there was any fraud involved in the organization of the defendant as a religious corporation 23 years before this dispute arose. Hence, this court has no reason or right to subvert the defendant’s corporate existence.
It follows then that the defendant, in its relations with others and specifically in this instance with the plaintiff, is required to *116 perform its corporate acts within its charter, its constitution and by-laws and the statute from which it derives its powers.
Since this court has applied the provisions of the statutory law and predicates its findings for the plaintiff on his cause of action in breach of contract against the incorporated Congregation as set forth in the cited sections of civil law, it follows that justice dictates that the court be required to use applicable civil law to limit the defendant’s liability under the written contract which is being enforced.
Judgment is rendered in favor of the plaintiff in the sum of $3,000 for breach of the contract of employment from January 1, 1962 and ending December 31, 1962. The plaintiff’s prayer for injunctive relief is denied and his cause of action in quantum meruit is dismissed. All motions made by the defendant on which the court has reserved decision are denied with appropriate exceptions.